IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: NORCOLD, LLC, | ) | Chapter 11 |
| | ) | Case No. 25-11933 (TMH) |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| KENNETH BERNSTEIN, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | C.A. No. 26-501 (MN) |
| | ) | |
| PROVINCE FIDUCIARY SERVICES, LLC, | ) | |
| as Liquidating Trustee for the Norcold | ) | |
| Liquidating Trust, | ) | |
| | ) | |
| Appellee. | ) | |

## <u>MEMORANDUM OPINION</u>

Kenneth Bernstein, pro se Appellant.

Lucian B. Murley, AKERMAN LLP, Wilmington, DE; Amanda Klopp, AKERMAN LLP, West Palm Beach, FL; Daren R. Brinkman, BRINKMAN LAW GROUP, PC, Wood Ranch, CA – Attorneys for Appellee.

July 31, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

This appeal arises in the chapter 11 case of Norcold, LLC ("the Debtor"). Pending before the Court is the *Emergency Motion to Vacate Dismissal Order, Stay Underlying Proceedings, and Sequester Estate Funds Pending Appeal* (D.I. 6) ("the Stay Motion") filed by pro se appellant Kenneth Bernstein ("the Appellant") with respect to his appeal of a Bankruptcy Court's May 6, 2026 Order (Bankr. D.I. 439) ("the Disallowance Order") which denied Appellant's motion for allowance and payment of an administrative expense claim for the reasons set forth on the record at a hearing held on April 28, 2026 (D.I. 1-1) ("4/28/26 Tr.") ("the Hearing"). The Court has considered the opposition (D.I. 9) filed by appellee, Province Fiduciary Services, LLC, as Liquidating Trustee ("the Liquidating Trustee") for the Norcold Liquidating Trust ("the Liquidating Trust"). For the reasons set forth herein, the Court will deny the Stay Motion.

## I.      BACKGROUND

### A.      The Debtors and the Plan

Norcold sold refrigeration units. Following a product recall, litigation and shifts in industry demand, on November 3, 2025 ("the Petition Date"), Norcold filed for chapter 11 to pursue a sale of its assets and a chapter 11 liquidation. (Bankr. D.I. 1, 2). Norcold purportedly had no employees as of the Petition Date. (*See id.*). In the Debtor's disclosure statement, Debtor disclosed a history of product liability issues, including, specifically, that in 2010, a fault was discovered in certain refrigerator units that could lead to gas escaping and pose a fire risk. (*See* Bankr. D.I. 191, Disclosure Statement, Section II.D.(1)). The defect led to recalls and significantly contributed to the Debtor's financial struggles. (*Id.*). The Debtor further disclosed that it "continues to face product liability claims, which the Debtor anticipates will largely comprise Class 5 (Litigation Claims)" under its proposed plan of liquidation. (*Id.* at Section II.D.(4)).

On February 20, 2026, the Debtor's plan of liquidation (Bankr. D.I. 290-1) ("the Plan") was confirmed. (Bankr. D.I. 290). The effective date occurred on February 27, 2026 (Bankr. D.I. 309), at which time, the estate's remaining assets were transferred to the Liquidating Trust. (*See* Plan at 26-27). The Plan defined "Litigation Claims" as:

> any Unsecured Claim, demand, suit, Cause of Action . . . or any other right or asserted right to payment, whether existing heretofore, now, or hereafter, whether known or unknown, based upon or in any manner arising from, related to, or in any way involving bodily injury, wrongful death, and/or property damage occurring prior to the Petition Date, including, without limitation any alleged property damage, product recall, personal injury, wrongful death, emotional distress, or other similar claim based on harms (whether physical, emotional or otherwise and whether or not diagnosable or manifested prior to the Petition Date).

(Plan, Article I.A.(68)). The Plan generally provides that all Class 5 Litigation Claims will be entitled to share *pro rata* in the Class 5 Liquidating Trust Interests. (*See* Plan, Art. III.B.5). The Plan further provides that "[n]o distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies alleged or which may be alleged in pending litigation with respect to such Insurance Policy." (Plan, Art. VI.N.3).

## B.    The Asset Sale to DCA

Prior to confirmation of the Plan, on February 4, 2026, the Debtor obtained an order (Bankr. D.I. 245) ("the Sale Order") approving the sale of substantially all of its assets to purchaser Dave Carter & Associates, Inc. ("DCA"). Pursuant to the APA relating to the Sale Order, DCA assumed certain liabilities of the Debtor as part of the asset sale, including "Warranty Claims" defined as:

> claims by end-customers or distributors arising from written product warranties covering units sold prior to the Petition Date, solely to the extent such claim amount is equal to the value of a refrigerator or less, determined in accordance with Seller's prepetition warranty policies as in effect on or prior to the Petition Date.

2

(Bankr. D.I. 214 (Stalking Horse APA) at § 1.1).  Following the asset sale and Plan confirmation, the Debtor ceased all business operations.

### C.    Appellant's Claim

On April 1, 2026, Appellant filed his Request for Allowance and Payment of Administrative Expense Claim (Bankr. D.I. 354) ("the Claim") in the amount of $95,000 pursuant to section 503(b) of the Bankruptcy Code.[1]  Section 503(b) provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).  For a claim to be entitled to priority under section 503(b)(1)(A), "the debt must arise from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532–33 (3d Cir. 1999).  A party seeking payment of an administrative expense has "a heavy burden" to demonstrate that the costs and expenses sought were necessary to preserve the value of the estate assets.  *Id.*

Appellant's Claim asserted damages to his RV home caused by alleged postpetition gross negligence by the Debtor.  The Claim generally alleges that on January 9, 2024, he bought an RV containing a Norcold Model 2118 SST unit; that the unit "possessed inherent manufacturing defects, specifically a high rate of cooling unit ruptures and fire hazards," and that Norcold (and others) willfully concealed those defects from Appellant. (*See id*. at p. 11 of 75).  The Claim further alleges that the unit later experienced a malfunction, and during the course of repair, a technician allegedly acting in accordance with a grossly negligent instruction from "Norcold tech support" disconnected the "thermistor" which is the "primary heat-regulating safety sensor." (*See id*.).  The Claim further alleges this action was substantially certain to cause harm, and that the unit did in fact overheat and

---

[1]    Appellant also submits a confirmation of a proof of claim submitted to Stretto Corporate Restructuring on March 30, 2026, but the claim itself is not attached. (*See* D.I. 6-3).

explode, causing a toxic release, contaminating Appellant's RV with a class 1 carcinogen, and displacing Appellant, "a 69-year-old post-cardiac surgery patient" from his RV home. The Claim further asserts that Norcold has failed to provide remediation or a non-defective replacement unit. (*See id*.). The Claim attached his proof of purchase of the RV. (*See id*. at  p. 6-10 of 75). The Claim further attaches email correspondence indicating that Appellant's warranty claim was denied on December 16, 2025, due to incomplete documentation. (*See id*. at p. 13 of 75). By email dated March 10, 2026, a customer service representative from "Thetford/Norcold," emailed Appellant that the warranty claim could not proceed because "the information we asked for on December 16, 2025 was never provided," there had been "no contact for the past three months," and "the unit's warranty period expired." (*See id*.).

The Liquidating Trustee objected to the Claim, arguing that it sought to elevate pre-petition general unsecured claim—allegedly arising from the Debtor's post-confirmation denial of coverage on a prepetition warranty—to administrative expense priority, which is unsupported by the Bankruptcy Code, controlling Third Circuit precedent, and the undisputed facts of the case. (Bankr. D.I. 382 at 1). The Liquidating Trustee argued that Appellant had not identified or offered evidence of any other post-petition act by the Debtor giving rise to the Claim. (*See id*. at 2). The Liquidating Trustee asserted that Appellant's true underlying claim (if valid) arises from the Debtor's pre-petition design, manufacture, and sale of the allegedly defective refrigerator unit—not from any post-petition conduct by the Debtor or the Liquidating Trustee. (*See id*.). "Under binding Third Circuit precedent, such claims are pre-petition unsecured claims, not administrative expenses, and are expressly provided for in the Plan as Class 5 Litigation Claims." (*Id*.). "Allowing [Appellant's] $95,000 product liability claim as an administrative claim simply because [Appellant] claims to have discovered the defect post-confirmation would elevate [Appellant's] claim above all other product liability claimants, whose injuries arose from the same pre-petition product defects." (*Id*.).

4

**D.**    <u>**The Disallowance Order and Appeal**</u>

On April 28, 2026, the Bankruptcy Court held the Hearing on the Claim. The Bankruptcy Court assumed for purposes of the Hearing that the Claim was timely filed (*see* 4/28/26 Tr. at 17). During oral argument, it became apparent that the Claim was based not merely on a defective product, but rather "work that was done . . . in a negligent fashion" based on "an instruction from the debtor to do something, which caused damage"—presumably the instruction to disconnect the thermistor. (*See id.* at 23-24). The Bankruptcy Court found insufficient evidence to support Appellant's assertion that the Debtor, which had no employees as of the Petition Date, could have given grossly negligent repair instructions during the relevant time period. Appellant did not present evidence or witness testimony to support his claim that Norcold gave grossly negligent instructions to the technician repairing his unit, or that there were any communications at all between the Debtor and the technician. (*See* 4/28/26 Tr. at 10, 22-25). The Bankruptcy Court explained that Appellant may have other viable claims or avenues of recovery, but ultimately denied the Claim from the bench, finding that Appellant had not sustained his evidentiary burden under section 503(b) of the Bankruptcy Code for the award of an administrative expense. (*See id.* at 26-27). The Bankruptcy Court directed the parties to confer and file a proposed order denying the Claim under certification of counsel.

On April 30, 2026, Appellant timely filed a Notice of Appeal (Bankr. D.I. 409), which attached a transcript of the bench ruling. Also on April 30, 2026, Appellant filed *Claimant's Motion for Stay Pending Appeal Pursuant to Fed. R. Bankr. P. 8007 and 11 U.S.C. § 105(a)* (Bankr. D.I. 410) ("the First Stay Motion"), which was subsequently scheduled for a hearing in the Bankruptcy Court on June 8, 2026. On May 4, 2026, the Liquidating Trustee filed a proposed order under certification of counsel consistent with the Bankruptcy Court's bench ruling (Bankr. D.I. 435), and on May 6, 2026, the Bankruptcy Court entered the Disallowance Order (i.e., the proposed order

5

that was submitted under certification of counsel).  On May 20, 2026, and prior to the Bankruptcy Court's hearing on the First Stay Motion, Appellant filed an additional Stay Motion with this Court together with numerous exhibits.[2]  On June 11, 2026, the Bankruptcy Court issued an order denying the First Stay Motion.  (D.I. 11-1).

## II.     JURISDICTION

This Court has jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a).  "An order allowing or disallowing a claim is a final, appealable order."  *In re Prosser*, 388 F. App'x 101, 102 n.1 (3d Cir. 2010) (quoting *Orsini Santos v. Mender,* 349 B.R. 762, 768 (1st Cir. BAP 2006)).  The Disallowance Order is a final order.

## III.    ANALYSIS

"The granting of a motion for stay pending appeal is discretionary with the court."  *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001).  A stay pending appeal is an "extraordinary remedy."  *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)).  The movant bears the burden of establishing that imposition of a stay is warranted.  In determining whether the moving party met its burden, courts in the Third Circuit consider the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay

---

[2]     Bankruptcy Rule 8007(a)(1) provides, "Ordinarily, a party must move first in the bankruptcy court" for "a stay of the bankruptcy court's judgment, order, or decree pending appeal" and for "an order suspending or continuing proceedings or granting other relief."  *See* Fed. R. Bankr. P. 8007(a)(1)(A), (D).  Appellant filed this Stay Motion before the Bankruptcy Court had a chance to determine the First Stay Motion. The Stay Motion does not contend that having the Bankruptcy Court first rule on the stay would be "impracticable" or offer any explanation for his failure to wait for the Bankruptcy Court's ruling on the First Stay Motion before filing another in this Court.  As Appellant offers no explanation for his failure to comply with Bankruptcy Rule 8007(b)(2), the Liquidating Trustee urges the Court to deny it on this basis. (*See* D.I. 9 at 5-6).  In light of Appellant's pro se status, the Court will review the Stay Motion on its merits.

6

> will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because all four factors are interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id*. at 571 (internal quotations and citation omitted) (emphasis in original).

**A.    Likelihood of Success on the Merits**

Appellant asserts that the Bankruptcy Court lacked jurisdiction to enter the Disallowance Order and further erred in disallowing his Claim. Appellant has failed to show a likelihood of prevailing on the merits of either of these arguments.

As to the first argument, Appellant asserts that the Bankruptcy Court was "divested" of jurisdiction to enter the Disallowance Order on May 6, 2026 because Appellant had already filed his Notice of Appeal identifying the Bankruptcy Court's April 28, 2026 bench ruling on April 30, 2026. (*See* D.I. 6 at 1-2; D.I. 6-4 (Ex. B)). As the Liquidating Trustee points out, Federal Rule of Bankruptcy Procedure 8002(a)(2) provides that "A notice of appeal filed after the bankruptcy court announces a decision or order—but before entry of the judgment, order, or decree—is treated as filed on the date of and after the entry." Thus, Bankruptcy Rule 8002(a) is a

forward-looking provision: "a premature notice of appeal does not ripen until [the] judgment[, order, or decree] is entered." *See FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 275 (1991) (interpreting Fed. R. App. P. 4(a)(2), a corollary provision to Fed. R. Bankr. P. 8002(a)(2) and explaining that the rule "permits a premature notice of appeal from that bench ruling to relate forward to judgment and serve as an effective notice of appeal *from the final judgment.*"). A district court is not vested with jurisdiction until the appeal has ripened after the judgment is entered.

Appellant cites *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) in support of his divestiture argument. (*See* D.I. 6-21 at 3-4). *Griggs* was based on a prior version of the Federal Rules of Appellate Procedure and held that a premature notice of appeal "was not merely defective; it was a nullity" that could not vest the appellate court with jurisdiction. *Griggs*, 459 U.S. at 61. Thus, the case is inapposite. Appellant further cites 28 U.S.C. § 1914, which governs filing fees, as a jurisdictional trigger, but cites no cases in support of his interpretation. (*See* D.I. 6-20 at 1-3). Section 1914 is an administrative fee provision which has no bearing on appellate jurisdiction. In sum, Appellant has failed to demonstrate a likelihood of success on his argument that the Bankruptcy Court was somehow divested of jurisdiction prior to its entry of the Disallowance Order.

As to the second argument, Appellant challenges the Bankruptcy Court's denial of his Claim for allowance and payment of an administrative expense priority claim under section 503(b) of the Bankruptcy Code. The Bankruptcy Court determined that Appellant failed to sustain his burden of evidence.

Appellant offers no basis to disturb the Bankruptcy Court's decision based on the record presented. Among other things, Appellant offered no evidence to contradict the Debtor's representations that it had no employees at the relevant time or to support the Claim's assertions that his damages arose from grossly negligent conduct of the Debtor. Although the Court is certainly

8

sympathetic to the Appellant's situation, and the challenges of pro se representation in complex chapter 11 proceedings, the Court sees little likelihood that Appellant can prevail on the merits of his appeal to meet the heavy burden associated with administrative expense status. Even assuming evidence exists to show that a Debtor-employee gave a grossly negligent repair instruction post-petition, the evidentiary record is now closed, and, as set forth below, this Court cannot order the discovery Appellant seeks.

### B. Appellant Has Not Shown Irreparable Harm in the Absence of a Stay

Appellant's sole theory of irreparable harm is "equitable mootness": the assertion that estate funds will be distributed before his appeal is resolved. But the Bankruptcy Court's Order expressly preserves Appellant's ability to assert a general unsecured claim, and the Liquidating Trustee has apparently agreed on the record not to oppose a timely motion to deem such a claim filed. (*See* D.I. 9 at 7). Moreover, Appellant's unsubstantiated claim to priority status over the estate's approximately $1 million in remaining assets cannot constitute irreparable harm when the Bankruptcy Court has already determined he is not entitled to that priority and when, contrary to Appellant's representations, there has not been any filing in the Bankruptcy Court to indicate that the Liquidating Trustee is preparing a final distribution.

As Appellant has failed to make the requisite showing on either of these first two stay factors, the inquiry into the balance of harms and the public interest is unnecessary. *See In re Revel AC, Inc.*, 802 F.3d at 571.

### C. The Remaining Requests for Relief Are Improper

The Stay Motion seeks additional relief beyond vacating or staying the Disallowance Order. First, Appellant asks this Court to sequester $64,000 of estate funds pending the outcome of this appeal. Appellant invokes Federal Rule of Civil Procedure 64 as authority for this request. Rule 64 provides provisional remedies "at the commencement of and during an action" to secure satisfaction

of a potential judgment.  But, as the Liquidating Trustee correctly points out, this is a bankruptcy appeal, not an original civil action.  This Court sits as an appellate tribunal reviewing the Bankruptcy Court's Disallowance Order; it does not function as a trial court with authority to attach estate assets.

Second, Appellant asks this Court to order "comprehensive forensic discovery" against the Liquidating Trustee, DCA, Beaver Coach Sales, Broadmoor RV, Jayco/Entegra, and other entities presumably involved in the manufacture, sale, and repair of the unit and RV.

As an initial matter, such a request would require the Court to exercise jurisdiction over non-parties to this appeal.  Moreover, this request is fundamentally incompatible with the nature of a bankruptcy appeal.  This Court functions as an appellate court in reviewing Bankruptcy Court decisions and reviews the record as developed below; it does not conduct de novo fact-finding or authorize discovery expeditions.  *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 210 n.19 (3d Cir. 1995) ("Under 28 U.S.C. § 158(a), the district court sits as an appellate court and is not authorized to engage in independent fact finding.").  "The District Court is limited to the factual record before the Bankruptcy Court."  *In re Applied Paging Techs., Inc.*, 250 B.R. 496, 499 (D.N.J. 2000) (citing *Mellon Bank, N.A. v. Delaware & Hudson Ry.,* 129 B.R. 388, 396 (D. Del. 1991).  The Bankruptcy Court specifically considered the evidentiary record and found it insufficient to support an administrative expense claim.  If Appellant believed additional discovery was necessary, the Court agrees that the proper course was to pursue it in the Bankruptcy Court before the Hearing on his Claim.  Appellant's dissatisfaction with the evidentiary record presented to the Bankruptcy Court does not entitle him to additional factual investigation in this Court.

Finally, the Stay Motion requests that, in light of Appellant's medical concerns, "this Court order that all initial appellate proceedings, including the court-mandated mediation sessions, be conducted strictly via Zoom or telephonic appearance."  (D.I. 6-1 at p. 2).  As the accompanying Order sets a schedule for merits briefing, as opposed to mediation, this request is denied as moot;

10

provided, however, that denial is without prejudice to Appellant's right to renew his request for accommodations, should the Court schedule any future hearings in this appeal.

## IV.    CONCLUSION

Accordingly, the Stay Motion will be denied.  An appropriate order follows.